UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINA MAZZONE-URIE,<br><br>Plaintiff,<br><br>v.<br><br>ONEWEST BANK FSB, et al.,<br><br>Defendants. | Case No. 21-cv-06075-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 65 |

  Plaintiff Florentina Mazzone-Urie initiated this foreclosure-related action back in August 2021. Plaintiff is an elderly woman. Her husband owned certain real property and applied for a loan modification in 2009. He died in 2012, allegedly without getting a decision on the application for a modification. Plaintiff was the beneficiary of the estate. Since her husband's death, Plaintiff has been trying to get modification of the loan. As of date, the property has not been foreclosed on, although foreclosure proceedings were initiated in 2021.

  Plaintiff has sued the following entities: (1) OneWest Bank, FSB; (2) Ocwen Financial Corporation; and (3) PHH Mortgage. Plaintiff asserts various causes of action against Defendants, including claims for violation of the Homeowner Bill of Rights ("HBOR"). Now pending before the Court is a motion to dismiss filed by one of the defendants: PHH Mortgage Corporation ("PHH"). In the caption of its motion, PHH states that it is the successor by merger to Ocwen Loan Servicing, LLC ("Ocwen") and was sued erroneously as the entities listed in (2) and (3). There is nothing to indicate to the contrary.

  Having considered the papers submitted, the Court hereby **GRANTS** PHH's motion to dismiss. The Court also **DENIES** Plaintiff's motion for an extension of time to find counsel to

represent her.[1]  *See* Docket No. 94 (motion for extension).

**I.     FACTUAL & PROCEDURAL BACKGROUND**

A.     Complaint

In her complaint, Plaintiff alleges as follows.

Plaintiff owns certain real property located in Pacifica, California.  *See* Compl. ¶¶ 5, 12.  There is a deed of trust on the property, reflecting a $600,000 loan made by Indymac Bank FSB.  The loan was originally taken out by Plaintiff's husband (before she married him) and his daughter in 2006.  *See* Compl. ¶ 12.

In 2009, Plaintiff married her husband.  *See* Compl. ¶ 15.  That same year, the husband applied for a loan modification.  *See* Compl. ¶ 15.

In 2010, the daughter relinquished her interest in the real property so that the husband was the sole owner.  *See* Compl. ¶ 16.

The husband never heard back on his loan modification application.  In March 2012, he died.  *See* Compl. ¶¶ 17-18.  Plaintiff was named the beneficiary of the estate.  *See* Compl. ¶ 18.

There are three different defendant entities: OneWest Bank, FSB; Ocwen Financial Corporation; and PHH Mortgage.  It appears that OneWest became the servicer of the loan related to the real property in July 2008.  *See, e.g.*, Compl. ¶ 14.  It appears that Ocwen later became the servicer of the loan.  *See, e.g.*, Compl. ¶ 19.  In 2019, PHH, which is a subsidiary of Ocwen, took

---

[1] In September 2024, the Court continued the hearing on the pending motion to dismiss because Plaintiff represented that she might be able to get counsel to represent her.  *See* Docket No. 86 (minutes).  Plaintiff subsequently asked for additional time to find counsel, and the Court gave her an extension.  *See* Docket No. 91 (order).  Plaintiff then moved for a second extension of time; the Court granted her relief again.  *See* Docket No. 92 (order).  Under that order, Plaintiff had until November 7, 2024, to find counsel to represent her.  On November 6, 2024, Plaintiff a third motion asking for an extension of time.

Plaintiff has now had approximately two months to find counsel.  The Court cannot indefinitely grant her extensions.  This lawsuit needs to move forward, especially as multiple attempts at settlement have not been successful and Plaintiff's bankruptcy case has now been dismissed.

To the extent Plaintiff asks for leave to file an opposition to the motion to dismiss in her pro se capacity, that request is also denied.  The Court has already given Plaintiff two different opportunities to file an opposition to dismiss, but she failed to do so.

over servicing. *See* Compl. ¶ 21.

As noted above, in March 2012, Plaintiff's husband died. At the time of his death, OneWest was still the servicer. It gave Plaintiff a forbearance period for the loan. Subsequently, Ocwen became the servicer and advised Plaintiff not to send any payment on the loan until the loan was modified. *See* Compl. ¶ 19. Plaintiff submitted documents required to modify the loan and was told that she would be the successor to the loan. *See* Compl. ¶ 20.

Apparently, nothing happened for some seven years. In 2019, PHH (as noted above, a subsidiary of Ocwen) took over the servicing of the loan. It told Plaintiff that she would need to start the process of applying for a loan modification over again. *See* Compl. ¶ 21. In June 2019, Plaintiff sent documents to support an application, including the husband's death certificate, documents from probate, the application, and a hardship letter. She spoke to a PHH representative who confirmed that the documents were received and was told "to continue withholding payments while the loan modification was under review." Compl. ¶¶ 22-24.

For some two years, Plaintiff did not hear back on her loan modification application. Because she had not heard from PHH, Plaintiff reached out, in February 2021, to an organization called Housing & Economic Rights Advocates ("HERA"). In March 2021, a HERA staff attorney assisted Plaintiff in sending in documents to support the loan modification application. In the following months, the attorney contacted PHH several times to check on the status of the application; each time, the attorney was told something new (*e.g.*, that there would be a decision by the end of the day, that documents were still missing, that the decision was still pending). *See* Compl. ¶¶ 26-31.

At some point, Plaintiff received a notice of trustee's sale. The sale was first scheduled for July 23, 2021. *See* Compl. ¶ 25.

On July 8, 2021, *i.e.*, about two weeks before the trustee's sale date, PHH informed Plaintiff that the loan modification application had been "denied because in order for her [*i.e.*, Plaintiff] to assume the loan, the loan would have to be current." Compl. ¶ 32. At some point, the trustee's sale was postponed to August 13, 2021. *See* Compl. ¶ 25; Plaintiff Decl. ¶ 15. There is no dispute that, currently, the property still has not been foreclosed upon.

3

B.     Litigation

Plaintiff initiated this lawsuit on August 6, 2021, after her loan modification application was denied. On the same day, Plaintiff filed her first ex parte application for a TRO, seeking to restrain the foreclosure sale. PHH filed an opposition to the motion, but no hearing was held because it postponed the sale, and thus Plaintiff withdrew the motion. *See* Docket No. 13 (notice). Plaintiff did not thereafter file a motion for a preliminary injunction. Nor is there any indication that she appealed the July 8 decision denying her loan modification application. However, the parties did engage in settlement discussions.

Presumably because settlement discussions were not successful, PHH set a new trustee's sale for October 8, 2021. Plaintiff then filed a second motion for a TRO on October 5, 2021, *i.e.*, just days before the sale. *See* Docket No. 17 (motion). A hearing was never held on the motion because the parties stipulated to Plaintiff withdrawing the motion. *See* Docket No. 24 (stipulation and order).

In May 2022, counsel for Plaintiff filed a motion to withdraw due to medical reasons. The Court permitted the withdrawal in July 2022, and, since then, Plaintiff has since been litigating this case pro se. *See* Docket No. 28 (order, filed on 7/1/2022). Since Plaintiff has been representing herself, no real litigation has taken place in the case. There was an attempt at settlement, with Plaintiff having the assistance of counsel through the Federal Pro Bono Project (limited to representation for mediation purposes), but that attempt was not successful. *See* Docket No. 59 (order, filed on 3/1/2024) (terminating limited scope representation). The Court thereafter referred the parties to a settlement conference with a magistrate judge (with no representation for Plaintiff).

In April 2024, following a scheduling conference with Judge Cisneros (the magistrate judge assigned for the settlement conference), PHH filed the pending motion to dismiss. Plaintiff did not file an opposition to the motion and instead, in May 2014, initiated a bankruptcy proceeding (Case No. 24-30350 (N.D. Cal. Bankr. Ct.)). PHH was listed as a creditor in the bankruptcy proceeding. This led Judge Cisneros to cancel the settlement conference. *See* Docket No. 68 (order). The Court temporarily vacated the hearing on the motion to dismiss in light of the

4

bankruptcy filing and asked for the parties' input as to how that proceeding impacted the instant case. *See* Docket No. 69 (order). PHH filed a response; Plaintiff did not.

Subsequently, the Court reset the motion to dismiss for hearing in September 2024 but gave Plaintiff a second opportunity to file an opposition to the motion to dismiss. The Court also gave an opportunity for the "bankruptcy players" (*i.e.*, the trustee, Plaintiff's bankruptcy counsel, and the bankruptcy court) to file statements if they had any views as to how the case at bar might impact the bankruptcy proceeding or vice-versa, whether the hearing on the motion to dismiss should proceed in this case, and whether the bankruptcy trustee would have an interest in participating in this case or a settlement conference under the auspices of this Court. *See* Docket No. 73 (order). The Court started the settlement process again with Judge Cisneros.

Thereafter, Plaintiff failed to file an opposition to the motion to dismiss. Plaintiff's bankruptcy counsel, however, did file a declaration "to advise [the Court] of the actions being taken in the bankruptcy court to address the claim of the defendant." Docket No. 79 (Voisenat Decl. ¶ 3). The declaration indicated that Plaintiff's bankruptcy case was referred to the bankruptcy court's Mortgage Modification Mediation Program in July 2024. *See* Docket No. 79 (Voisenat Decl. ¶ 5 & Ex. A). Plaintiff's bankruptcy counsel cited to one case in support of his assertion that a "non-debtor's filing of a motion to dismiss a complaint initiated by the debtor is a violation of the automatic stay." Docket No. 79 (Voisenat Decl. ¶ 8).

A settlement conference was held before Judge Cisneros in early September 2024, but the case did not settle. *See* Docket No. 87 (minutes). In mid-September, the Court held the hearing on PHH's pending motion to dismiss but continued it after Plaintiff represented she might be able to locate counsel to represent her. *See* Docket No. 86 (minutes). Plaintiff has not been successful in finding counsel. *See* note 1, *supra*. In early November 2024 and again in mid-November 2024, Judge Cisneros conducted additional settlement conferences, but still the case did not settle. *See* Docket No. 96 (minutes).

On November 18, 2024, the bankruptcy court dismissed the bankruptcy case after the trustee filed a motion to dismiss. The trustee had moved to dismiss based on Plaintiff's failure to attend multiple creditors' meetings. The bankruptcy court's dismissal order noted that Plaintiff

5

failed to oppose the trustee's motion to dismiss.

## II. DISCUSSION

A. Legal Standard

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B. Plaintiff's Causes of Action

Plaintiff has asserted seven causes of action against Defendants, including PHH.

(1) Violation of 12 C.F.R. § 1024.41. This regulation[2] is related to loss mitigation procedures. *See, e.g.*, 12 C.F.R. § 1024.41(b)(2)(i) (providing that, "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall" review the application to determine if it is complete and notify the borrower in writing within 5 days as to whether the application is complete or incomplete); *id.* § 1024.41(c)(1) (providing that, "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then within

---

[2] The regulation is a part of the Real Estate Settlement Procedures Act ("RESPA").

6

30 days the servicer shall "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing [as to] which loss mitigation options, if any, it will offer to the borrower"); *id.* § 1024.41(g) (providing that, "[i]f a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless," *e.g.*, the servicer notifies the borrower that "the borrower is not eligible for any loss mitigation option" and the appeal process is over).

(2) Violation of California Civil Code § 2923.6. This is part of the HBOR and bars dual tracking. *See, e.g.*, Cal. Civ. Code § 2923.6(c) (providing that, "[i]f a borrower submits a complete application for a first lien modification . . . at least five business days before a scheduled foreclosure sale, a mortgage servicer . . . or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is still pending").

(3) Violation of California Civil Code § 2923.7. This is also part of the HBOR and relates to a single point of contact ("SPOC"). *See, e.g.*, *id.* § 2923.7(a) (providing that, "[w]hen a borrower requests a foreclosure prevention alternative, the mortgage service shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact").

(4) Negligence.

(5) Breach of contract.

(6) Elder financial abuse.

(7) Violation of California Business & Professions Code § 17200.

C.  Plaintiff's Failure to Oppose the Motion to Dismiss

As an initial matter, the Court notes that Plaintiff has had two opportunities to oppose PHH's motion to dismiss but failed to do so. Because she failed to oppose, the Court could grant

7

arguably the motion to dismiss on that basis alone. In the interest of justice, however, the Court still considers the merits of the arguments made in PHH's motion.

D. RESPA Claim

In her complaint, Plaintiff alleges that Defendants violated three provisions in RESPA:

- **12 C.F.R. § 1024.41(b)(2)(i)**, which states that, "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall" review the application to determine if it is complete and notify the borrower in writing within 5 days as to whether the application is complete or incomplete. 12 C.F.R. § 1024.41(b)(2)(i). According to Plaintiff, this provision was violated because she "never received a written notice until 15 days before her scheduled Trustee Sale." Compl. ¶ 38.
- **Section 1024.41(c)(1)**, which provides that, "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then within 30 days the servicer shall "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing [as to] which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1). According to Plaintiff, this provision was violated because she "never received a description of other loss mitigation options she may be available for nor a list of steps [s]he should take to be considered for those options." Compl. ¶ 38.
- **Section 1024.41(g)**, which provides that, "[i]f a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless," *e.g.*, the servicer notifies the borrower that "the borrower is not eligible for any loss mitigation option" and the appeal process is over. 12 C.F.R. § 1024.41(g). According to Plaintiff, this provision was violated because Defendants "proceed[ed] with foreclosure prior to Plaintiff's being denied" for loss mitigation, "making a possible appeal," or "reject[ing] . . . all possible loss mitigation options."

8

Compl. ¶ 39.

PHH argues first that the RESPA claim lacks merit because Plaintiff complains about not getting notices "after 12 years," Compl. ¶ 38, but the regulation did not even take effect until January 2014. This argument is not persuasive. To be sure, Plaintiff does suggest she has a claim because her husband first applied for loan modification back in 2009; however, as alleged, she also applied for loan modification in 2019.

PHH argues next that, even if there is no timing problem, Plaintiff has failed to state a claim for relief. Here, the Court agrees.

One of Plaintiff's RESPA theories is that Defendants (including PHH) violated § 1024.41(c)(1) which provides that, "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then within 30 days the servicer shall "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing [as to] which loss mitigation options, if any, it will offer to the borrower." But there is no indication that PHH did not evaluate Plaintiff for all loss mitigation options available to her. Also, PHH did provide notice to Plaintiff in writing that it was not offering her any loss mitigation options. As alleged, on July 8, 2021, *i.e.*, about two weeks before the trustee's sale date, PHH informed Plaintiff that the loan modification application had been "denied because in order for her [*i.e.*, Plaintiff] to assume the loan, the loan would have to be current." Compl. ¶ 32. In any event, the prior initiation of a foreclosure sale is now moot.

Another RESPA theory is that Defendants violated § 1024.41(g), which provides that, "[i]f a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless," *e.g.*, the servicer notifies the borrower that "the borrower is not eligible for any loss mitigation option" and the appeal process is over. But here, as noted above, Plaintiff was told on July 8, 2021, that she was not eligible for a loss mitigation option. It is not clear how long the appeal process is, but there is no indication that Plaintiff did appeal. Furthermore, even though a foreclosure sale was set at one point for October 8, 2021, ultimately, no foreclosure has taken place and thus, as noted above, is moot.

9

**E.      Dual Tracking Claim (Cal. Civ. Code § 2923.6)**

As noted above, the dual tracking claim is based on § 2923.6(c) which provides in relevant part as follows: "[i]f a borrower submits a complete application for a first lien modification . . . at least five business days before a scheduled foreclosure sale, a mortgage servicer . . . or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is still pending."

PHH contends the dual tracking claim lacks merit because Plaintiff is not a "borrower" under the statute; that was her husband. *See* Cal. Civ. Code 2920.5(c)(1) (defining "borrower" as "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer"). PHH adds that any rights Plaintiff had as a successor in interest have been repealed. PHH is referring to California Civil Code § 2920.7, which was repealed in January 2020. Prior to repeal, § 2920.7 provided that, upon being notified by a purported "successor in interest that a borrower has died, and where that claimant is not a party to the loan or promissory note, a mortgage servicer shall not record a notice of default pursuant to Section 2924 until the mortgage service" requests "reasonable documentation of the death of the borrower" and "reasonable documentation . . . demonstrating the ownership interest of that claimant in the real property." Cal. Civ. Code § 2920.7(a) (2019). Section 2920.7 also provided that "[b]eing a successor in interest . . . does not impose an affirmative duty on a mortgage servicer to alter any obligation the mortgager has to provide a loan modification to the successor in interest. If a successor in interest assumes the loan, he or she may be required to otherwise qualify for available foreclosure prevention alternatives offered by the mortgage servicer." *Id.* § 2920.7(b)(3) (2019). In addition, the statute provided that the mortgage servicer had to allow the successor in interest to "[a]pply to assume the deceased borrower's loan" or to "simultaneously apply to assume the loan and for a foreclosure prevention alternative." *Id.* § 2920.7(d) (2019). And the statute provided that, if a trustee's deed upon sale has not been recorded, a successor in interest could seek injunctive relief to enjoin a material violation of, *e.g.*, § 2920.7(a), (b), and (d). If so, then the successor in interest could seek damages. *See id.* § 2920.7(e) (2019).

10

Section 2920.7 clearly provided a successor in interest with rights. But, as PHH contends, the repeal of that provision precludes Plaintiff's HBOR claim for dual tracking.

Moreover, PHH correctly argues that, for Plaintiff to get relief under the HBOR, she must show a material violation of the statute. *See* Cal. Civ. Code § 2924.12(a)(1) (providing that, if a trustee's deed upon sale has not been recorded, then a borrower may bring an action for injunctive relief to enjoin a material violation of, *inter alia*, § 2923.6). The dual tracking statute is intended to prevent a foreclosure from taking place while a loan modification application is still pending. Here, the loan modification application was rejected on July 8, 2021. It does not appear that Plaintiff appealed the denial. Thus, based on the allegations of the complaint, there would be not be a bar to foreclosure because no application is pending anymore.

F.   SPOC Claim (Cal. Civ. Code § 2923.7)

Plaintiff contends that the extended delays she faced with her loan modification application was a result of the failure to appoint a single point of contact ("SPOC"). The SPOC claim also lacks merit because of the repeal of a successor in interest's rights.

In addition, as above, PHH validly asserts that Plaintiff has failed to show a material violation. Even assuming that there was a failure to appoint a SPOC (it is not clear that the delays were attributable to such), at this point, Plaintiff has had her loan modification application denied.

G.   Negligence Claim

Like her statutory/regulatory claims, Plaintiff's negligence also fails. "The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013). Here, the allegations in the complaint do not support a duty of care. To be sure, California Civil Code § 1714(a) provides that "everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary skill in the management of his or her property or person." Cal. Civ. Code § 1714(a). But, "[e]ven if California law provides that a legal duty of care runs between a plaintiff and a defendant, courts have the power and obligation to examine whether considerations of public policy warrant *limiting* that duty." *Shalgoun v. North Los Angeles County Regional Center, Inc.*, 99 Cal. App. 5th 929, 946 (2024) (emphasis added).

11

And in *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022), the California Supreme Court held that a lender does not owe a borrower a tort duty to process, review, and respond carefully and completely to a borrower's loan modification application (*i.e.*, "so as to avoid causing [a] plaintiff pure monetary loss through a lack of care in handling his applications"). *Id.* at 919.

In her complaint, Plaintiff suggests that Defendants had duties to her pursuant to the HBOR – *i.e.*, §§ 2923.6 and 2923.7. *See* Compl. ¶ 67 (alleging that these statutes "set forth specific duties a beneficiary and loan servicer must uphold for a loan in default and a borrower seeking a foreclosure prevention alternative or loss mitigation option"). But there do not appear to be any authorities suggesting that a plaintiff could have a viable negligence claim based on those statutes if a direct claim based on the statutes was not viable – *i.e.*, a negligence claim should not be used as an end-run around the statutes.

H. Breach of Contract Claim

The breach of contract claim is also subject to dismissal. It does not appear that Plaintiff was ever a party to any contract with Defendants, including the deed of trust. *See* Compl. ¶ 80 (alleging that the contact was the deed of trust). To be sure, the deed of trust suggests that a successor in interest can stand in the shoes of the borrower, but this is only in limited circumstances. *See* RJN, Ex. 1 (Deed of Trust § 13) ("Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is *approved* by Lender, shall obtain all of Borrower's rights and benefits under this Security Interest.") (emphasis added).

It also is unclear how PHH allegedly breached the deed of trust. In the complaint, Plaintiff suggests that there was a breach because Defendants violated her rights under the HBOR. *See* Compl. ¶ 83. ("Defendant breached the contract when it violated Plaintiff's rights under the Homeowners Bills of Rights, and violated California Law."). But a breach of the HBOR is not a breach of contract. She fails to identify another basis for her claim of breach of contract.

I. Elder Abuse Claim

The elder abuse claim also is not viable. Under California Welfare & Institutions Code § 15610.30,

12

> "[f]inancial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
>
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
>
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
>
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

Cal. Wel. & Inst. Code § 15610.30(a). "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." *Id.* § 15610.30(b).

Plaintiff claims elder abuse because

> Defendants systematically obscured its [sic] actions and motivations to gain ownership of the Property. Defendants spent years leading on Plaintiff that her loan modification was under review only to be told 15 days before the Trustee Sale that she was not allowed to assume the loan because it was not current. Clearly, Defendants were never intending to allow Plaintiff to assume the loan, and were biding time to strip the Property of its equity.

Compl., 6th Cause of Action, ¶ 4.

But it is not clear how Plaintiff can claim elder abuse when nothing has actually been taken from her as of yet. As PHH points out, the foreclosure has not happened.

Furthermore, it is not clear that there is a risk of elder abuse. Nothing suggests an intent to defraud by PHH. To the extent Plaintiff is asserting wrongful use, that is not a tenable position given that the loan has been in default for years and the amount owed appears to be substantial. *See* RJN, Ex. 6 (notice of default, dated 5/31/2019) (stating that the unpaid balance is approximately $411,000 as of June 2019). Also, nothing suggests PHH is obligated to modify the loan at issue, and PHH issued the denial of the loan modification application back on July 8, 2021.

J.   Section 17200 Claim

The § 17200 claim is essentially a derivative claim. Because the claims above all lack merit as pled, the § 17200 claim also fails.

### III.   CONCLUSION

For the foregoing reasons, the Court grants PHH's motion to dismiss in its entirety. The Court, however, shall give Plaintiff leave to amend her complaint because it is not clear that amendment would be futile. Plaintiff's amended complaint shall be filed by January 3, 2025. PHH shall then have until January 31, 2025, to file a response to the amended pleading. **Plaintiff is advised that, if she fails to file an amended complaint by the date specified, then her case will be dismissed with prejudice.** Also, Plaintiff is advised that the Court will not entertain any additional requests for extension of time if the only basis for the request is more time is needed to find counsel. Of course, if Plaintiff finds counsel to represent her, they may make an appearance.

This order disposes of Docket No. 65.

**IT IS SO ORDERED**.

Dated: November 25, 2024

_____
EDWARD M. CHEN
United States District Judge